# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* PICKWORTH/LITTLE, Minors.

UNPUBLISHED
September 12, 2017

No. 337396
Jackson Circuit Court
Family Division
LC No. 15-000964-NA

Before: Hoekstra, P.J., and Meter and K. F. Kelly, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order terminating her parental rights to her minor children, KP, BL, and AL, under MCL 712A.19b(3)(g) and (j).[1] We affirm.

This case primarily concerns mother's inability to rectify her issues with substance abuse that led to the removal of her children. In the early part of 2015,[2] Child Protective Services received a complaint alleging methamphetamine use and production at mother's home. A worker for the Department of Health and Human Services (DHHS), as well as a Springport, Michigan, police officer, made an unannounced visit at mother's house. Mother admitted to using marijuana and claimed that she had a valid Michigan medical marijuana card, but she could not produce her card at the time of the visit. Mother also attempted to hide a small pipe during the visit, but the police officer saw it before she could hide it. The police officer did a swab of the kitchen surfaces in mother's house, which returned positive results for methamphetamine. As a result of the home visit, mother's children were removed from her care.

Mother first argues that the trial court clearly erred in finding that clear and convincing evidence supported termination of her parental rights under MCL 712A.19b(3)(g). We disagree.

In order to terminate parental rights, the trial court must find that at least one of the statutory grounds for termination has been established by clear and convincing evidence. MCL 712A.19b(3); *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). This Court reviews the trial court's determination for clear error. *Id*. "A finding is 'clearly erroneous' if,

---

[1] The trial court also terminated the parental rights of the fathers. However, the fathers are not parties to this appeal.

[2] The record gives February and April, variously, as the pertinent month.

-1-

although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made." *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009).

The trial court terminated mother's parental rights to the children under MCL 712A.19b(3)(g), which provides:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

> *   *   *

> (g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

"A parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to provide a child proper care and custody." *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014).

First, we conclude that the trial court did not clearly err in finding that mother failed to provide proper care or custody for the children. In fact, mother admits to as much in her brief on appeal. Mother failed to keep her household in a safe and proper manner. Authorities found methamphetamine residue on mother's kitchen surfaces and found a drug pipe sitting openly in the house. Most disturbingly, one of mother's children, AL, was born with methamphetamine in her system.

Second, we also conclude that the trial court did not clearly err in finding that there was no reasonable likelihood that mother could provide proper care and custody of the children in a reasonable time considering their ages. The oldest of the three children, KP, had been in foster care for a total of approximately 1 ½ years at the time of the termination hearing. The other two children had been in foster care for essentially their entire lives. Mother barely made any attempt to rectify the issues that brought the children into care until the termination petition was filed. Moreover, a foster-care worker assigned to the case testified that she would need to see at least nine months of sobriety before mother could move to unsupervised visits with the children, let alone have them returned to her care. She also testified that mother had a history of sporadic employment.

Additionally, the trial court ordered mother to participate in and benefit from services, including parenting-skills classes and drug treatment. However, despite this, mother was discharged from a drug-counseling program due to noncompliance. She also tested positive for methamphetamine throughout the case. Mother had at least 17 positive drug screens for methamphetamine, and missed a total of 98 other drug screens. She also took approximately six months to complete an eight-week parenting-skills class. Mother's lack of participation in and benefit from her case-service plan was evidence that she would be unable to provide proper care and custody within a reasonable time. *Id*. Also, a psychologist who was counseling mother

-2-

testified that mother had poor coping skills and that she had difficulty putting others' needs ahead of her own. Accordingly, we hold that the trial court did not clearly err in finding that clear and convincing evidence supported termination of mother's parental rights under MCL 712A.19b(3)(g).

Because "[o]nly one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights," *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2001), we need not address mother's argument regarding the remaining statutory ground for termination, *In re HRC*, 286 Mich App at 461.

Mother also argues that the trial court clearly erred with respect to its best-interests finding. We disagree.

To terminate parental rights, the trial court must find by a preponderance of the evidence that termination was in the child's best interests. *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). The trial court's findings of fact are reviewed for clear error. *In re HRC*, 286 Mich App at 459.

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). In determining the children's best interests, the trial court may consider the children's bond to their parent; the parent's parenting ability; the children's need for permanency, stability, and finality; and the advantages of a foster home over the parent's home. *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012). The trial court may also consider the parent's compliance with the case-service plan, the parent's visitation history with the children, the children's well-being while in care, and the possibility of adoption. *In re White*, 303 Mich App at 714. The trial court may also consider a parent's substance-abuse problems and willingness to participate in counseling. *In re AH*, 245 Mich App 77, 89; 627 NW2d 33 (2001).

At the conclusion of the termination hearing, the trial court made note of the children's need for permanence and stability, the children's well-being in foster care, the advantages of a foster home over mother's home, mother's history of substance abuse, and mother's lack of participation and compliance with the case-service plan. Regarding permanence and stability, the children had been in foster care for approximately 1 ½ years (in KP's case) and essentially their entire lives (in BL and AL's case). The trial court opined that the children needed permanency, stability, and finality.

Regarding the children's well-being while in foster care, the testimony indicated that KP was having behavioral and social issues that required inpatient and outpatient counseling as well as medication. The foster parents were able to take KP to see a counselor and were also able to get her admitted into temporary inpatient counseling. Also, AL suffered from methamphetamine withdrawal symptoms, including tremors, and she had a heart malformation. Her foster parents were able to get her to see a doctor for her withdrawal symptoms and took her to the University of Michigan for treatment on her heart. BL's foster parents often took her to a doctor because of her poor immune system.

Regarding the advantages of the foster home over mother's home, the testimony indicated that the children were exposed to methamphetamine and marijuana while in mother's home. The trial court opined that the children would not be subjected to the types of things in the foster homes that they were subjected to in mother's home. Additionally, the evidence demonstrated that mother was not able to put the children's needs ahead of her own wants and needs.

Regarding mother's history of substance abuse, the evidence indicated that the children were removed from mother's home due to this issue. Despite this, mother continued to test positive for methamphetamine long after the initial petition was filed. The majority of the children's issues stemmed from mother's substance abuse.

Additionally, regarding mother's compliance with and participation in her case-service plan, the evidence indicated that mother was supposed to participate in and benefit from parenting-skills classes and substance abuse-treatment. Despite this, mother was discharged from a substance-abuse program, and it took her approximately six months to complete an eight-week parenting class. Moreover, even though mother was supposed to submit to frequent drug screens, she failed to show up to at least 98 different screens.

Based on this evidence, we are not "left with a definite and firm conviction that a mistake has been made" with regard to the children's best-interests. *In re HRC*, 286 Mich App at 459. Accordingly, we hold that the trial court did not clearly err in finding that termination of mother's parental rights was in the best interests of the children.

Affirmed.

/s/ Joel P. Hoekstra
/s/ Patrick M. Meter
/s/ Kirsten Frank Kelly